235 So.2d 726 (1970)
Carl J. WILHELM, Petitioner,
v.
WESTMINSTER PRESBYTERIAN CHURCH, Florida Department of Commerce, and Industrial Relations Commission, Respondents.
No. 39258.
Supreme Court of Florida.
May 20, 1970.
George H. Brown, III, St. Petersburg, for petitioner.
Chester L. Skipper, of Ramseur, Bradham, Lyle, Skipper & Cramer, St. Petersburg, Patrick H. Mears and J. Franklin Garner, Tallahassee, for respondents.
ROBERTS, Justice.
The Industrial Relations Commission affirmed a decision by the Judge of Industrial *727 Claims denying compensation to an injured workman who seeks review here by petition for certiorari.
Petitioner-claimant is a sixty-six year old male who was employed by the Westminster Presbyterian Church on April 5, 1968 as a janitor-custodian to mow and weed the lawn, fertilize and prune trees, sweep and mop, and make minor repairs to the premises. About one-thirty p.m. on May 17, 1968, claimant was asked by the minister to accompany him in order to pick up a heavy sofa-bed located on the second floor of a private residence. Removing the piece of furniture necessitated carrying it down a stairway by lifting it over a hand rail at the top and making twists and turns to get it to the first floor. The minister suspended the top end of the sofa and claimant the bottom, as they carried it down and placed it in a station wagon. Shortly thereafter claimant went home and that night began to experience discomfort in his back, which to him felt like "something jumping in my back"; he arose and walked about, took Anacin and returned to bed. The next day he went to work although still suffering and continued to work while taking pain relief medicine and on May 24th saw Dr. William Norris. Later he was referred to Dr. Rieth and to Dr. James L. West, and finally to Dr. W.L. Yarborough on December 18, 1968. Dr. Yarborough testified that claimant had a herniated disc and discussed the possibility of surgery and gave him a return appointment for about two months later. Claimant was advised to attempt some form of light activity and to continue conservative treatment by taking pain relievers and wearing a corset or support, if helpful. The doctor stated without surgery no further medical treatment was anticipated but that claimant should not lift as much as a 20-pound weight. The transcript shows the following: 
"Q. His history, and your comment just then, indicated the onset of symptoms, his helping carry what you described in your report as a 300 pound couch down the stairs. In your opinion was this the competent precipitating cause of his symptoms?
"A. Yes, sir. Even though it didn't happen at that moment, it did happen by the next morning, and there was no other factors we could find.
* * * * * *
"Q. Did he describe any discomfort at all in his back on the day that he carried this sofa?
"A. [Reading from claimant's history] No, sir, he actually noted no particular back symptoms at that time, associated with actually putting it down or shortly thereafter.
"Q. Doctor, if there was an injury to the intervertebral disks at that time, would you expect there to be symptoms at that time?
"A. This would depend on the magnitude of rupture.
"Q. If we postulate there is an underlying rupture of the annulus, how much protrusion of the disk material itself took place then, and how much of his symptoms, as it later developed, was on the basis of reactive symptoms?
"A. If it was just a little rupture into the annulus at that time, this did not stretch the outer ligaments, or any of the nerve fibers then, but the amount of protrusion to the annulus would not have been sufficient to set off any sensory impulses. But then we do have some reactive swelling, so the swelling into the disk, the swelling by the next morning would be sufficient to have set off the train of symptoms.
"Q. Doctor, in the train of history obtained from this man, what leads you to believe it was the carrying *728 of this sofa that produced the herniation as distinguished from any other activities?
"A. It is the only incident that took place preceding the onset of his pain that might be expected to cause a back injury. Even if it did not happen right at the moment, we could not find any other accident or injury, or what not that would tend to have any bearing on it. And without any history of past back trouble he should have had some type of strain on his back to have caused it.
"Q. Could this sprain have been produced by a misstep like off a curb?
"A. Yes, sir, that could have been.
"Q. Turning over in bed?
"A. Yes, sir. Here we might have expected him to have a history in the past of having some back trouble before. The easier it is to cause such symptoms, I think, that will eventually lead to a diagnosis of a disk, the more we should have had in the way of a build-up. One just turning over in bed, one would expect some history of back trouble before. Having what we regard as a normal back before and significant in terms of trauma to the back. Even though it didn't happen abruptly and acutely, it was something out of the ordinary which might be expected to cause back trouble."
Further in the record we find that a witness for employer testified "All I can remember is that he [petitioner] came to the office door after they had moved the davenport and he said that he had this pain in his back and he thought it was arthritis or sceatica."
In his order the Judge of Industrial Claims found, inter alia * * * "It is merely conjecture to connect the disc problem with the one episode of lifting. Rather if there was an accident described, and I so find, it was an accident which occurred when the employee rolled over in bed on the day following the lifting episode while in the employ of the employer. I have given full consideration to the testimony of Dr. Yarborough to the effect that it is likely that the lifting could have and did produce the injury, but this is still in the realm of conjecture as to whether it actually did or not." As a result, the Judge denied the claim for temporary total disability from May 24, 1968 through December 18, 1968, and for permanent total or permanent partial disability, attorney's fee, penalties and interests and costs. The Industrial Relations Commission affirmed and claimant seeks review of this order.
We conclude the Judge of Industrial Claims and the Commission erred in finding that claimant suffered no accident within the contemplation of Florida Statute § 440.02(19), F.S.A. We are committed to the doctrine that the trial judge is charged with the duty of holding a hearing and making findings of fact, and his findings are entitled to great weight and ordinarily will not be reversed. Wilkes v. Oscar's Transfer & Storage, 164 So.2d 810; United States Casualty Company v. Maryland Casualty Company, 55 So.2d 741. However, we are also committed "to the doctrine that when a serious injury is conclusively shown and a logical cause for it is proven, he who seeks to defeat recovery for the injury has the burden of overcoming the established proof and showing that another cause of the injury is more logical and consonant with reason." Jim Rathmann Chevrolet Cadillac, Inc. v. Barnard, 200 So.2d 161, 164; Sanford v. A.P. Clark Motors, Inc., 45 So.2d 185; Crawford v. Benrus Market, 40 So.2d 889. There was no evidence of a prior back injury and the fact of a serious injury is conclusively shown. The foregoing evidence presented a logical explanation of causal relationship to the injury so as to require the employer-carrier *729 to show that another cause of the injury is more logical and consonant with reason. It does not appear the conjecture that the condition of petitioner may have been caused by turning over in bed is more logical and consonant with reason than the injury was the result of the unusual exertion of moving the heavy sofa on the afternoon before the onset of back pains that night. Petitioner testified he had never suffered any pain in his back prior to the moving incident although he was sixty-four years of age at the time, and by an unbroken chain of events from that night to the time of the hearing he has been under medical treatment and suffers disabling back pain. The record shows that petitioner suffered pain and sleeplessness the night of the sofa-moving incident but returned to work the next day, stating he did not want to appear a weakling although he could hardly move. He went to work for a week until finally driven by pain to see a doctor. Incidentally, this testimony relative to petitioner's will to work regardless of pain is consistent with information in the record elicited by employer's attorney regarding a prior industrial injury to claimant's arm in which there was monetary settlement plus a disability rating of 15%, and where petitioner continued to report to work. We pause to note here, as we have in other cases, that it is commendable for one to make an honest effort to continue to earn a livelihood regardless of pain, and no man should suffer a penalty for an apparent forthright statement concerning an injury.
In summary, we hold there was a compensable industrial accident within the meaning of the statute, as a result of which the claimant was injured. Gray v. Employer's Mutual Liability Company, 64 So.2d 650; Zerwal v. Caribbean Modes, Inc., 170 So.2d 840, and Williams v. Terrazzo Associates, 224 So.2d 257.
For the foregoing reasons, the order of the Industrial Relations Commission is quashed with instructions that the cause be remanded to the Judge of Industrial Claims with directions that an appropriate award of compensation be made.
It is so ordered.
ERVIN, C.J., and DREW and CARLTON, JJ., concur.
THORNAL, J., dissents.