380 So.2d 1145 (1980)
David H. McNEW, Appellant/Cross-Appellee,
v.
SOUTHERN INTERMODAL LOGISTICS and Employers Insurance of Wausau, Appellees/Cross-Appellants.
No. QQ-256.
District Court of Appeal of Florida, First District.
March 10, 1980.
*1146 Steven A. Werber, Robert A. Skells, of Commander, Legler, Werber & Dawes, Jacksonville, for appellant/cross-appellee.
M. Wayne Myers, of Cowles, Coker & Myers, Jacksonville, for appellees/cross-appellants.
SHAW, Judge.
In January of 1978 the appellant, David H. McNew, entered into an agreement with the appellee, Southern Intermodal Logistics, under the terms of which he agreed to furnish, upon request, his tractor and the labor to operate the tractor; the equipment and labor to be available for use at all times during the term of the agreement. Southern required the claimant to take out workmen's compensation insurance and deducted the insurance payments from claimant's weekly pay. As part of the agreement the claimant obligated himself to keep his tractor in safe operating condition and in compliance with ICC safety regulations. Southern routinely inspected the vehicle to insure that it was being maintained properly.
On September 28, 1978, the claimant was struck in the head by the door of the cab while making vehicular repairs and was hospitalized for a laceration of the scalp. The next day he noticed blurred and cloudy vision which progressively worsened and was diagnosed by Dr. Chiel M. Wind, an ophthalmologist, as bilateral choroidal sclerosis. Dr. Wind referred the claimant to Dr. J. Donald M. Gass, a professor of ophthalmology at the University of Miami Medical School and a specialist in retina diseases, who diagnosed serpiginous choroiditis. It was brought out during the course of the hearing that at the time of the accident the claimant was experiencing no significant difficulties with his eyes but that in 1972 had experienced a visual problem which was diagnosed at the time as chorioretinitis. Although there is some disagreement as to the nomenclature of the claimant's eye condition, the medical experts agreed that it is an inflammatory disease of unknown cause which has a tendency to reoccur and progress over a period of years. The experts agree that the disease has only been well-described for about six or seven years and according to Dr. Gass there are less than 100 reported cases in the world. Faced with this dearth of medical information regarding the disease the experts agree that it is impossible to state within any degree of probability the relationship *1147 between trauma and the disease. Dr. Gass, however, felt that in light of the temporal relationship, the trauma and the exacerbation of the disease are related within the realm of medical probability or a "tremendous coincidence."
The deputy commissioner, we feel, correctly found that the accident arose out of and within the course and scope of the claimant's employment and reserved jurisdiction as to the award of costs and fees. Points 1 and 2 on cross-appeal are accordingly affirmed. He erred, however, in denying the claim for the eye injury.
When serious injury is conclusively shown and a logical cause for it is proved he who seeks to defeat recovery of compensation for the injury has the burden of overcoming the established proof and showing that another cause of injury is more logical and consonant with reason. Wilhelm v. Westminster Presbyterian Church, 235 So.2d 726 (Fla. 1970). The medical experts, due to their unfamiliarity with the disease, are reluctant to testify that it was probably reactivated by the blow to the head. On the other hand, a more logical reason for the exacerbation has not been advanced and Dr. Gass, who possessed the superior qualifications in this field, placed significance upon the temporal relationship between the blow to the head and the flareup of the disease. The dilemma faced by the experts is illuminated by the following excerpt from the deposition of Dr. Gass:
Q Now, Doctor, what is the relationship, in your opinion, between the trauma and the onset of that lesion?
A Well, there is no relationship in the past, to my knowledge, between trauma and this disease.
It tends to have a flareup unrelated to anything the patient does.
These patients are in perfectly good health.
And this is the first patient I ever saw who had trauma and very shortly thereafter noted the onset of a reactivation of his disease. And yet  and whether there is a cause and effect, I can't say.
The only thing you can say, there's no question that the onset, reactivation of his disease temporally was related to the time he got hit on the head with whatever it was, the cab of his truck. If you can rely on this history  and we have pretty good facts about what happened very soon after that.
But I can't say  it's not a disease that we characteristically associate with trauma precipitating an active reactivation of it. I just haven't gotten that history before.
But I think I would hasten to say that this disease has only been well-described in about six or seven years; it's been in the past mixed up with many other diseases.
And so we still  if you recorded the world literature, you would be talking about less than 100 cases.
Q You make the statement in your report, "I think one has to say it's within the realm of medical probability that the blow to the head" 
A Well, I think that the only thing I can say, it's either that or it's a tremendous coincidence, and it would be that.
I don't know what the truth of the matter is.
It's just that when somebody says he gets hit on the head and very shortly thereafter has visual loss, evidence pictorially, examination, every other way that he's got an active lesion there.
And we know that was his only good eye.
We know he was not driving a truck with the vision he had when I saw him.
While we can appreciate the reluctance of the doctors to render an opinion relative to causality, we must weigh this reluctance against the impossible position the claimant is placed in due to the state of the art. Taken in a vacuum we agree with the deputy's observation that a mere temporal connection is insufficient to establish a causal connection between accident and injury. However, where, as in the instant case, the claimant conclusively demonstrates a serious *1148 injury and a logical cause for it is proven, the carrier, in order to defeat recovery for the injury, has the burden of overcoming the established proof and showing that another cause of the injury is more logical and consonant with reason. Wilhelm, supra. We believe the carrier failed to overcome the claimant's proof of a serious injury and a logical cause therefor. On this issue the order is reversed and the cause is remanded to the deputy commissioner with directions that he enter an order consistent with this opinion.
ERVIN and SHIVERS, JJ., concur.