500 So.2d 193 (1986)
Victor RALOSKY, Appellant,
v.
DYNAMIC BUILDERS, INC. and Hanover Insurance Company, Appellees.
No. BI-349.
District Court of Appeal of Florida, First District.
September 16, 1986.
Rehearing Denied October 14, 1986.
*194 Craig F. Hall of Hall & Hall, Gainesville, for appellant.
Jack A. Langdon, Gainesville, for appellees.
ERVIN, Judge.
In this workers' compensation appeal, claimant contends that the deputy commissioner erred in finding no causal connection between his work-related accident and injuries to his feet, thereby denying his claim for medical benefits. We reverse.
Claimant was injured in a compensable automobile accident on June 21, 1983, resulting in his complaints of pain mainly to his lower back, and numbness running down his toes. For three months following the accident, claimant followed a regimen of complete bed rest. During this period, he testified that he did not put weight on his feet more than three times a day. Claimant did not, however, complain of pain in his feet until almost a year following the accident, just a few days before his office visit with a podiatrist, Dr. Guidice.
Dr. Guidice testified that he initially examined claimant on June 20, 1984, at which time claimant complained of pain in both his feet and legs. Dr. Guidice observed the presence of large calluses on both claimant's feet and concluded that this condition was the result of claimant's attempts to modify the weight distribution on his feet to relieve pain and discomfort. Dr. Guidice also found evidence of healed fractures with osteoporotic changes in both feet. According to Dr. Guidice's testimony, there was no other reason for this condition absent some kind of injury or insult. Dr. Guidice commented that it was not uncommon for a competent, treating physician to overlook fractures of the feet, and that claimant's lower back pain, which required medication, would have a tendency to mask pain in other areas of the body, such as the feet. He added that it was not unusual for the type of fractures that claimant had sustained to exhibit itself some two to six months following the accident, concluding that claimant's foot condition was consistent with the history given of the trauma  the compensable automobile accident.
Claimant's initial treating physician, Dr. Urban, a specialist in ambulatory and minor emergency care, testified that his records of claimant's office visits in June and July 1983 failed to disclose that claimant had complained of foot pain, or that there was anything else at that time to place him on notice that claimant had sustained any injury to his feet, in that claimant was then walking without aid. When confronted with Dr. Guidice's testimony, Dr. Urban responded that one would suspect clinically with reasonable certainty that the fractures would render ambulation extremely difficult. Dr. Urban, however, conceded that he would accept Dr. Guidice's opinion as to claimant's problem and that claimant's back pain may have masked pain in his feet.
Dr. Waters first treated claimant on November 14, 1983, and diagnosed his condition as chronic, low back pain syndrome. He, like Dr. Urban, testified that he had no record of foot pain during claimant's initial office visit. Later, however, he related that claimant complained of extreme foot pain. Thereafter, Dr. Waters examined claimant's feet but did not take any x-rays. Although he admitted that claimant's foot problems could be related to the automobile accident, he nonetheless was of the view that it would be highly unlikely for claimant to be unaware of any pain to his feet, if, in fact, the fractures had occurred during the accident.
After reviewing the record before us, we must conclude that the deputy's order denying medical benefits was in error. If the order were governed solely by the competent, substantial evidence rule, we would have no alternative but to affirm. The evidence  although conflicting  reveals *195 that Dr. Urban was of the view that one would suspect, with reasonable medical certainty that a person who had sustained the type of fractures that claimant alleged he had suffered in the work-related accident would have difficulty ambulating shortly after the accident. Dr. Waters, moreover, similar to Dr. Urban, felt it was highly unlikely that claimant was not aware of pain to his feet until several months afterwards, if in fact claimant sustained the fractures at the time of the accident.
The issue before us, however, does not depend simply upon whether the findings on review are supported by competent, substantial evidence. We are asked to decide whether the deputy's finding that there was no causal relationship between the claimant's industrial accident and the injuries to his feet is legally supported by the evidence. In a case such as that at bar, "[w]here an injury is shown, and the evidence presents a sufficiently logical explanation of a causal relationship between the accident and the subsequent injury, the burden shifts to the employer/carrier to show a more logical cause." Poorman v. Muncy & Bartle Painting, 433 So.2d 1371, 1372 (Fla. 1st DCA 1983). Accord, McNew v. Southern Intermodal Logistics, 380 So.2d 1145, 1147 (Fla. 1st DCA 1980). Here claimant produced a sufficiently logical explanation through the testimony of Dr. Guidice that the injury to his feet was caused by the automobile accident. The employer/carrier failed to present any evidence establishing a more logical cause for the injury, other than the work-related accident, which was supported by the medical testimony disclosing extensive injuries to other parts of his body. Under the circumstances presented, the deputy erred in denying the claim for medical benefits.
REVERSED.
SHIVERS, J., concurs.
THOMPSON, J., dissents with written opinion.
THOMPSON, Judge, dissenting.
I dissent.
The majority opinion relies upon only a portion of the testimony of Dr. Guidice, a podiatrist, to reverse the decision of the deputy commissioner (deputy) finding that there was no causal connection between claimant's work-related accident and the injuries to his feet.
Admittedly there is some competent substantial evidence in the portion of the testimony of Dr. Guidice recited in the majority opinion to support an order finding that there was a causal connection between the claimant's work-related accident and the injuries to his feet. However, that is not the question presented to this court. The sole issue before this court is whether there is competent substantial evidence to support the deputy's finding that there was not a causal connection. As this court emphasized in Swanigan v. Dobbs House, 442 So.2d 1026 (Fla. 1st DCA 1983).
We do not review whether there was competent, substantial evidence to support the claim disallowed by the deputy; we only review whether the record contains competent, substantial evidence to support the deputy's order. (Emphasis by the court.)
Even the portion of Dr. Guidice's testimony not recited establishes that in his opinion it was not possible, or at least not probable, that the claimant could have suffered fractures to both feet in the accident and walked without aid or apparent pain the day of the accident and during the several months following the accident. When asked to assume (as Dr. Urban and Dr. Waters testified) that when treated following the accident the claimant walked without aid, and without any apparent pain, whether that would be consistent with having sustained fractures of both feet in the accident, Dr. Guidice said, "I think the man would hurt like hell, and couldn't do much ambulating under any circumstances."
In addition, Dr. Urban testified that he saw and examined the claimant the day of the accident. His diagnosis was "contusion, left forearm" and he said that the claimant's chief complaint was of pain in the left forearm but that he also had sternum *196 or breast bone pain and lower back pain. On subsequent visits claimant also made complaints concerning his leg. Dr. Urban's only apparent objective finding was a bruise on claimant's left arm. The doctor further testified, "During Mr. Ralosky's visits to our clinic and during the months of June and July, 1983, he did not complain specifically of pain in the right or left foot." Later he said, "I will simply repeat that during the patient's multiple visits on nine occasions during the months of June and July, '83 to our clinic, he did not specifically complain of foot pain." Upon being asked whether it was unusual for the injury to show up later he stated:
One would suspect clinically, with reasonable certainty, that fractures of bones of either foot would render ambulation, walking, without aid of crutches or cane well nigh impossible or extremely difficult. Therefore, one would suspect that the patient would have been complaining of these injuries at least during the course of some 35 days of being seen here at our clinic.
Dr. Urban was asked if there was a reasonable explanation for the fact that the claimant had delayed complaints of a foot fracture, and he answered, "I could only state that during his visits to our clinic the patient was ambulating without aid and apparently without pain in his feet." He did say it was possible that the back pain could have masked the pain in claimant's feet, but almost anything is possible and such a conclusion is a far cry from testimony that with reasonable medical certainty, fractures of bones of either foot would render walking without the aid of crutches or a cane almost impossible or extremely difficult. It is contended that the claimant had fractures of not one but both feet, yet he had no apparent difficulty or pain walking without the aid of crutches or even a cane during the two months following his industrial accident. This testimony by Dr. Urban, standing alone, is competent substantial evidence within reasonable medical certainty that there was no causal connection between the foot injury and claimant's industrial accident.
The claimant was treated by Dr. Waters, an orthopedic specialist, in November of 1983, approximately six months after the accident. At that time claimant was complaining of lower back and extremity pain and numbness. He was found to have tenderness in the paralumbar muscles along the spinal column in the lower part of the back and his straight leg raising test was positive at about 80 to 90 degrees on the left side. He made no complaint whatsoever about foot pain to Dr. Waters on his initial visit. He returned to Dr. Waters on January 24, 1984, more than seven months after his accident, and still had no complaint of pain in either foot. At this time the claimant's back pain had improved and he was engaged in a back rehabilitation program, was doing his exercises, and was taking no medications. It necessarily follows that there was not sufficient back pain to mask any foot pain at this time. Dr. Waters allowed claimant to go back to light work with restrictions that he not be required to stoop frequently, bend frequently, or lift weights heavier than 20 to 30 pounds. Dr. Waters was of the opinion that claimant would reach maximum medical improvement within six weeks of his visit of January 24, 1985. He found claimant had a five percent permanent impairment of the body as a whole. The only medication he prescribed at that time was plain Tylenol or aspirin for discomfort. Only on one visit to Dr. Waters in March of 1984, more than nine months after the accident, did the claimant complain of foot pain. He was seen later by Dr. Waters in August of 1984 and his only complaint of pain at that time was in his neck and lower back. Dr. Waters further testified:
Again, in my experience, fractures in the feet are usually painful. I've not  and I've seen a lot of people, since I deal with a lot of trauma, that have other associated conditions that are more painful. And although it's possible, I would expect somebody with fractures in the feet to specifically complain of foot pain before several months went by. (Emphasis supplied.)
*197 He also said, "It's possible to mask anything, but in my experience, I've not seen that degree of masking from other areas that are painful."
There is no issue as to who has the burden of proof before this court. Even if the burden of proof and the logical cause of claimant's foot fractures were issues, Dr. Guidice's testimony did not establish that the claimant's industrial accident was a logical cause of his foot injuries. The majority's reliance on the testimony of Dr. Guidice to establish the causal connection between the claimant's foot fractures and his industrial accident, and to establish that the accident was the cause of the foot fractures, is misplaced. For his opinion, Dr. Guidice relied on a description of the accident given him by the claimant that when the accident occurred he jammed both feet against the floorboard or dashboard. This is contrary to what he said the day of the accident when he told Dr. Urban that the van he was in broadsided another car and he was bounced around in the interior of the van resulting in complaints of multiple painful areas including left arm, right knee, lower back and sternum, but no complaint of pain in either foot. It is also contrary to what he said July 20, 1983 when he told Dr. Maulden that he was involved in a van-auto accident while working and was apparently tossed around in the van. The deputy was entitled to believe this version of the accident. More importantly, the uncontradicted medical evidence reflects that the claimant was walking without difficulty, without aid and without apparent pain, for several months following the accident. All of the medical testimony, including that of Dr. Guidice, indicates that the claimant had healed fractures of his feet at the time of the accident and that the logical cause of those fractures was trauma to his feet received quite some time prior to the industrial accident.
If the deputy had found there was a causal connection between the foot fractures and the claimant's industrial accident I would agree to affirm without hesitation although there is much less evidence to support such a conclusion. Not only is there competent substantial evidence to support the deputy's finding of no causal connection, the greater weight of the evidence supports such a finding and his order should be affirmed. The sole issue is the substantial competent evidence issue and to reverse the deputy's finding of no causal connection between the foot injury and the claimant's industrial accident is merely substituting our judgment for that of the deputy.
I would AFFIRM.