WIGGINTON, Judge.
Before us is a workers’ compensation appeal from the order of the judge of compensation claims denying benefits on the basis that claimant had failed to carry his burden of proof in establishing a compensa-ble injury. We find that the issues raised herein may be resolved by application of the logical cause doctrine in claimant’s favor and therefore reverse the judge’s order.
The accident in question occurred on December 20, 1988, while claimant was employed as a carpenter by the employer herein, when he slipped and fell between a section of joists striking his arm, leg, and allegedly, his head.[1] At the time of the accident, claimant was 34 years old and had been working for the employer since the beginning of November 1988. His medical history is noteworthy for treatment of congenital cataracts in both eyes. In May 1988, a cataract was surgically removed from claimant’s left eye and an implant inserted. Complications from that surgery resulted in the need for subsequent minor surgery to correct scarring. On December 15, 1988, just prior to the industrial accident, a cataract was removed from claimant’s' right eye and, again, an implant was inserted. Both operations were performed by ophthalmologist Dr. Mitchell.
Immediately following the subject accident, claimant informed his employer of his injuries and was asked if he desired to go to a family practice center. He responded by advising the employer that he had a scheduled appointment that day with Dr. Mitchell (five days post-op from the right lens implant surgery).[2] Claimant, in fact, did keep his scheduled appointment with Dr. Mitchell that day. Dr. Mitchell later testified on deposition that at that time, blood from a hemorrhage that had occurred just after the surgery had cleared somewhat but that a full view of the right eye implant was obstructed by residual blood. Since the implant was obstructed at that time, Dr. Mitchell testified that its position was unascertainable. During this same scheduled examination, claimant reported to Dr. Mitchell a “fall at work.”
Claimant returned to work and noticed that he had reduced visual acuity in his right eye. On January 3, 1989, claimant returned for a subsequent visit with Dr. Mitchell at which time the doctor confirmed that the lens had been dislodged. The tal- *527 plant was removed on January 26, 1989, and replaced by a contact lens. Although the contact lens is uncomfortable, claimant testified that without it he could not work because he lacked depth perception. Claimant ceased working for the employer on January 9, 1989.
At the time of the hearing, Dr. Mitchell testified by deposition. He indicated that on the day following the implant surgery to the right eye, he was able to partially see the lens to ascertain that it was in the central part of the pupil. However, on December 20, due to the hemorrhaging as noted above, the location of the implant could not be determined, although his report notes that claimant had improved. Nonetheless, on January 3, 1989, his notes indicate that claimant reported reduced visual acuity, and it was determined that the lens had been dislodged. As to the cause of the lens dislocation, Dr. Mitchell testified that he was not certain what factors were most active in moving the implant. He maintained that implants can slip as a result of an accident or without an accident and he had no information as to what caused the implant to move other than the accident at work. According to Dr. Mitchell, one of the possible causes of the implant dislocation was claimant’s fall and there was nothing else in claimant’s history other than the accident which would supply a possibility for the movement of the lens. Dr. Mitchell concluded that in this particular case, the fall was the most likely cause of the dislodging of the implant.
Following the hearing, the judge entered an order wherein the eye injury was found to be noncompensable and the request for medical care denied. The judge found that a “fair reading of Dr. Mitchell’s testimony as a whole” failed to establish that the fall, within a reasonable degree of medical probability, caused the implant to slip. The judge cited Scotty’s, Inc. v. Jones, 393 So.2d 657 (Fla. 1st DCA 1981).
Contrary to the conclusion of the judge, we must agree with claimant that Dr. Mitchell’s testimony was sufficient to invoke the logical cause doctrine as enunciated in Wilhelm v. Westminster Presbyterian Church, 235 So.2d 726 (Fla.1970). The most telling portion of Dr. Mitchell’s testimony was when he stated that there was nothing else in claimant’s history other than the accident which would account for the movement of the implant and that the fall was the most likely cause. The fact that claimant had just recently, within several days of the industrial accident, undergone implant surgery and had thereafter sustained a traumatic fall — which Dr. Mitchell conceded could be a cause of implant slippage — and then within a few days thereafter noticed a marked change in his visual acuity, would certainly establish a logical cause relationship between the fall and the dislocation of the implant.
Although the judge relied heavily on the opinion in Scotty’s Inc. v. Jones, we find that case to be distinguishable. Therein, a lapse of approximately nine to twelve months occurred between the industrial accident and the point when the claimant first began to experience lower back pain. Additionally, the only medical testimony on the issue of causation was a doctor’s opinion that he was “really doubtful” that the claimant’s back problems were related to the industrial accident. Similarly distinguishable on their facts are the cases of City of Ft. Lauderdale v. Lindie, 496 So.2d 168 (Fla. 1st DCA 1986); International Minerals & Chemical Corporation v. Buckley, 526 So.2d 760 (Fla. 1st DCA 1988); and City of St. Augustine v. Allen, 537 So.2d 1032 (Fla. 1st DCA 1988).
In contrast, through claimant’s and Dr. Mitchell’s testimony, claimant carried his burden of proof of establishing a logical cause for his injury, which then shifted the burden to the E/C. We agree with claimant that the E/C failed to carry their burden of showing a more logical cause for claimant’s injury simply by pointing to the complications he earlier suffered following the implant in his left eye. Although Dr. Mitchell did testify that some patients do have a tendency to suffer complications following implant surgery, he also specifically stated that “the problems that occurred in the right eye with hemorrhage and apparent movement of the im *528 plant out of position were not the same problems that were encountered after the left eye.” After the surgery upon the left eye, there were actually pieces of the cataract that dropped into the field of the pupil. Dr. Mitchell went on to observe that it was fair to say that
whenever a young person develops cataracts and requires surgery, it is a little bit different than the normal state of affairs in which cataracts occur in the older patient and sometimes we do encounter difficulties when caring for the young individual with cataracts. I do not think that I expected the same types of problems to occur nor did they in the second.
When asked whether he could say within a reasonable degree of medical probability why claimant suffered the implant slippage in his right eye, Dr. Mitchell noted that the implant was in its proper position at the time of surgery and was also centered in the pupil at the time of his first post-op visit the next day. He noted that the second post-op visit was complicated by the hemorrhage obscuring his view of the implant and he also received information that claimant had fallen that day at work. By the time the hemorrhage cleared sufficiently for him to see the implant better, the implant had moved out of position. Dr. Mitchell stated that he had no other information about any events that may have happened to have effected the implant’s slipping, outside of what claimant reported. When asked whether there was anything in claimant’s history other than his fall that would supply a possibility as to why the implant moved, Dr. Mitchell stated, “No.”
Based on the foregoing testimony, claimant clearly adduced evidence presenting a sufficiently logical explanation of a causal relationship between the industrial accident and his injury and the E/C failed to present additional evidence showing a more logical cause. Manley v. Bennett’s Truck Equipment, 506 So.2d 1145 (Fla. 1st DCA 1987). Accordingly, the judge erred in finding that claimant had not proven that his implant slippage was caused by his industrial accident and we therefore reverse and remand for further proceedings.
One further issue concerns whether the judge erred in failing to award any past medical bills from Dr. Mitchell. However we point out that in the order the judge noted the parties had agreed to handle medical expenses administratively in the event that the claim is found to be compen-sable.
REVERSED and REMANDED for further proceedings consistent with this opinion.
SMITH and BARFIELD, JJ., concur.

. In regard to the head injury, the employer’s office manager, who was also a friend of claimant, testified that on the date of the accident she was informed by claimant of only injury to his arm, leg and rib cage. Moreover, the claimant failed to give his treating ophthalmologist a clear and specific history of having struck his head. However, this dispute does not bear on our determination of the compensability of the claim.

. Here again, a dispute in the evidence as to the subsequent authorization of Dr. Mitchell arises. Claimant maintains that the employer apparently agreed to Dr. Mitchell. To the contrary, the office manager testified to the effect that not only did she not have authority to authorize Dr. Mitchell, but that she offered claimant authorized treatment which he refused. Further, Dr. Mitchell conceded he never received authorization from the employer/carrier for treatment of the claimant. Again, because of our decision on the issue of compensability, these contested facts become irrelevant. In any event, as noted in the final order, in the event the claim was found to be compensable, the parties agreed to handle medical expenses administratively.