DREW, Justice.
The commission in this case has affirmed an award of compensation for temporary total and permanent partial disability, i. e. loss of hearing in one ear, apportioned equally between a compensable accidental injury and pre-existing disease.
Only two questions are involved in these proceedings and both are factual. The first question is whether there was an accident; and the second is whether the injuries for which compensation is claimed were causally related to such accident.
Very few compensation orders of a deputy commissioner are as complete and well prepared as the one involved here. Not only does the deputy comply in all respects with the statute and decisions with respect to the contents of his order but it evidences a thorough knowledge of all of the testimony before him and a conscientious concern to reach a correct conclusion in the case. He found, after carefully analyzing the evidence of the various witnesses and personally examining an automobile of the same model in which the claimant alleged she received her injuries, that claimant, while in the course of her employment on *162 July 20, 1964, was thrown against the windshield of the car in which she was riding when it stopped suddenly to avoid striking a preceding car. The employer insists there was no accident and that claimant was not thrown against the windshield as she alleged. The question therefore is whether there was competent, substantial evidence to support this finding of the deputy. In this connection the claimant testified that she was sitting in the front seat of the car talking to the driver when the driver was required to stop very suddenly to avoid hitting the car which was preceding her. The driver testified “I said to Jackie [claimant] ‘are you all right’ and she said, ‘yes, I could have hit my head.’ ” But she denied that Jackie did hit her head. On cross-examination this witness admitted that a suit was then pending against her by Jackie, the claimant, for injuries which arose out of the accident, and that they were not on good relations at that time. Obviously this witness was an interested one.
The witness Chester Roy Ruby was in the service office of the employer and testified that on the day the accident happened and shortly thereafter claimant advised him she had to go to the hospital because she had a fractured skull when she bumped her head against the windshield of the car. This witness also testified that the dashboard of the car in which they were riding is so constructed that the passenger could not have bumped her head against the windshield as she alleged. The deputy commissioner did not believe this evidence for he specifically found “the undersigned deputy commissioner tested this statement out personally and found that it was quite possible for a passenger to hit his or her head without leaving the seat.”
Dr. Holzer saw the claimant on the morning after the accident. He testified “when I first saw her I just briefly examined her in the office. She was bleeding from her left ear, and she had some abrasions on her face and her 'forehead." (E.S.) Further he said “she had a large ecchymosis on the left side of her forehead and edema of her right — of her left eyelid.” Moreover, he testified it was a relatively fresh injury and that he would assume it was about twenty-four hours old. His examination resulted in sending her to the hospital for treatment and further observation by a neurologist.
Measured by any yardstick, the evidence supports the conclusion of the deputy that there was an accident. That it arose out of and in the course of employment is not questioned.
We turn now to the question of whether the injuries so received were causally related to the accident. At this point the fact should be emphasized that the deputy apportioned the disability 50% to a previous mastoid condition and 50% to the accident.
Five doctors testified. The deputy analyzed the testimony of these doctors and concluded that the injury received when claimant struck her head resulted in a rupture of the ear drum (admittedly weak because of a mastoid operation in 1956). The deputy’s analysis of the testimony of these specialists is most convincing. When the testimony of each of the doctors is examined carefully none would deny that such a blow on the head could result in the injuries which the claimant received, and one, Dr. MacGregor (his qualifications were stipulated in the record), testified that within reasonable medical certainty the accident caused claimant’s injuries. The following summarizes his view:
“Q And based upon your examination and the medical history of the patient, could you relate the loss of hearing to the accident ?
“A Yes.”
Dr. Holzer, the physician who first treated the claimant testified as to her physical condition immediately after the accident. In his testimony he stated that “within reasonable medical certainty” or probability the deafness of claimant was not due to the accident. He testified that he did not spe *163 cialize and that most of his training was in general surgery. From an examination of Dr. Holzer’s testimony it is quite evident that he did not believe the story of claimant and finally, after sending her to the hospital and referring her to Dr. Borsanyi, he “washed his hands” of the case. His testimony, as well as the testimony of the other doctors, because of the nature of the injuries received by claimant, was inconclusive.
The testimony of Dr. Scott, the neurosurgeon, contributed little to the solution of the problem. He made a neurological examination only and his testimony may be summed up by the following questions and answers:
“Q Doctor, you correct me if I am wrong. You are not able at the present time to state with reasonable certainty whether or not this woman suffered a hearing loss as a result of the alleged accident?
“A No.
“Q —Of your own knowledge?
“A That is right. I hadn’t any records of her previous hearing, and detailed hearing tests were not performed during my examination * * *
“Q But, at any rate, doctor, the electroencephalogram has nothing to do with testing hearing or loss or hearing, is that correct?
“A As used in this instance, it does not.”
Dr. Borsanyi is the eye, ear, nose and throat specialist who examined and treated the claimant and testified at length concerning the injuries. His testimony is inconclusive, but, when examined at large, the impression is inescapable that the injury which claimant says she received could have caused the condition complained of. Dr. Borsanyi’s problem seems to be primarily with determining how much of the loss of hearing was attributable to the prior mastoid condition and how much to the accident. For instance, Dr. Borsanyi said:
“I also made a comment the pathology in the left ear alone can account for the type hearing loss she has in this ear. There is no way of proving whether she suffered additional hearing loss in the left ear as a result of the accident.”
Again Dr. Borsanyi said:
“She could have had additional damage from the accident. I don’t rule this out. But, on the other hand, I can not separate it, nor nobody else, because if I had the records of what she had prior to the accident, that would be very easy to tell.”
The following question and answer is also enlightening upon the subject:
“Q Could the beneficial effect of prior surgery have been destroyed by the claimant striking her head against a car windshield?
“A Well, again, I have to give a qualified answer: provided she had a good result, and provided she had a healthy ear, I would have to say yes.”
Dr. H. G. Lavelle, Jr. was the fifth physician who testified. He performed surgery on the claimant in Tennessee in 1965 following the accident and the treatment of Dr. Holzer and Dr. Borsanyi. His testimony, the same as the others, is inconclusive as to whether the accident resulted in the condition that brought about the operation in 1965. He testified that he did not think the condition he found some months later when he operated was due to the accident “unless a foreign body is introduced in the ear at the time of injury * * * It is difficult of course to know whether a foreign body was introduced into the area at that time, because a small piece of glass or formica, or something of that nature could have gotten into her ear, and although there was no evidence of it when I saw her, it could have occurred; there could have been some foreign body introduced into the ear at the
*164 time of the injury, and I can’t say whether there was or not.”
The above questions and answers and summaries of the medical testimony are illustrative of the whole testimony of these physicians and the problems facing the deputy in reaching his conclusion. His analysis of it is logical and thorough and the conclusion that he reaches particularly in the light of Dr. MacGregor’s testimony, which he had a right to believe, is logical and reasonable and consonant with all of the facts surrounding the alleged injury particularly when the evidence is undisputed that immediately after striking her head on the windshield this claimant began suffering severe headaches, the following morning she awoke with a badly infected and bleeding ear and such condition continued over a period of months until it was finally operated on by a doctor in Tennessee.[1]
There is another factor which was considered by the deputy and which I think is highly pertinent. It is the finding of the deputy that claimant could hear with her left ear after surgery was performed in 1956 and that she experienced no difficulty with her hearing from that time until .after the accident involved in these proceedings. It is, of course, true that claimant did not have a perfect ear and that the ear that she did have was more easily injured than it would have been prior to the surgery in 1956. But this is a condition often existing in cases of this type .and the deputy credited 50% of the loss to such previous condition.
As stated in the beginning of this opinion, the two sole questions involved are factual. Both questions were resolved in favor of the claimant by the deputy commissioner and his conclusion was approved by the full commission. There was competent, substantial evidence to support the compensation order and that is all the law requires. For us now to set aside this order would be to invade the province of both the deputy commissioner and the full commission.
The petition for writ of certiorari is accordingly denied.
THORNAL, C. J., O’CONNELL and ERVIN, JJ., concur.
CALDWELL, J., dissents with opinion.
THOMAS, J., and SACK, Circuit Judge, dissent and concur with CALDWELL, J.

. “This court is committed to the doctrine that when a serious injury is conclusively shown and a logical cause for it is proven, he who seeks to defeat recovery for the injury has the burden of overcoming the established proof and showing that another cause of the injury is more logical and consonant with reason.”
Sanford v. A. P. Clark Motors, Inc., Fla. 1950, 45 So.2d 185, 187. See also Crawford v. Benrus Market, Fla.1949, 40 So.2d 889; Lyng v. Rao, Fla.1954, 72 So.2d 53; Johnson v. Dicks, Fla.1954, 76 So.2d 657; United Electric Company v. Myers, Fla.1961, 134 So.2d 7; 35 Fla. Juris. Workmen’s Compensation, p. 621, para. 238.