212 So.2d 289 (1968)
Herman A. FISHER, Petitioner, Cross-Respondent,
v.
CARROLL DANIEL FISHER CONSTRUCTION COMPANY, Employer, and the Florida Industrial Commission, an Administrative Agency, Respondents, Cross-Petitioners.
No. 36277.
Supreme Court of Florida.
June 26, 1968.
Rehearing Denied July 16, 1968.
*290 Rose & Marlow, Miami, for petitioner, cross-respondent.
Monroe E. McDonald, of Sanders, McEwan, Schwarz & Mims, Orlando, for respondents, cross-petitioners.
Patrick H. Mears, Tallahassee, and J. Franklin Garner, Lakeland, for Florida Industrial Commission.
ERVIN, Justice.
This is a certiorari review of an order of the Florida Industrial Commission affirming the findings and award of the Deputy Commissioner in this Workmen's Compensation case.
In this case it appears Claimant, a 59-year-old male, suffered on May 22, 1959 a compensable accident. The injury resulting was a lumbar strain that aggravated a pre-existing degenerative disc disease at the L-3, L-4 level. Claimant continued working and was given conservative treatment by his physician, but did not improve. In April, 1960 a myelogram was performed on Claimant and definitive disc surgery was carried out. By September, 1960 he returned to light work. However, he continued to have back difficulties and in 1961 a surgical procedure known as a "flinchum," which involves bracing of the vertebra by use of bone from the fibula, was performed. As a result, he was placed in a plaster jacket through April 13, 1962. He continued to be treated by his physicians, receiving injections for pain. By August 8, 1962, Claimant's pain in his back and right leg had worsened and he was again hospitalized and given epidural blocks for pain. On September 26, 1962 Claimant was again submitted to surgery in the form of an anterior spinal fusion at the lower three levels, which involved going in the front of the body and working toward the spine. He was again placed in a body cast and discharged from the hospital, but was readmitted November 9, 1962 because of increased pain.
In January, 1963 the orthopedic physician, Dr. Flynn, treating Claimant noted that he was becoming somewhat bizarre and irrational. At this time he was readmitted to the hospital for a change of his cast. While there on February 5, 1963 Claimant suffered a grand mal convulsion and later it was discovered that as a result of the convulsion he had sustained fractures of the 12th dorsal, 8th dorsal and 1st lumbar vertebrae. In addition, he was troubled with boils, rash and abscesses over a long period as a result of the plaster body jackets and prolonged bed rest.
Dr. Flynn was of the opinion and testified Claimant had reached maximum medical improvement on October 4, 1963 from the anterior fusion performed in September, 1962 and Claimant was discharged from treatment thereof. Dr. Flynn was also of the opinion Claimant would never be able to do laborious work and estimated his anatomical disability at forty per cent of the body as a whole. He testified the Claimant's recovery from the fusion would have been lengthy despite the grand mal or epileptic convulsions or seizures. He apportioned the hospitalization and medical *291 expenses arising from the fusion recovery and the epileptic seizure. Dr. Howarth, a neurosurgeon, was of the opinion that any treatment given Claimant after February 5, 1963, the date of the seizure, was attributable primarily to the seizures.
Based on the foregoing testimony and evidence, the Deputy found, inter alia:
(1) That as a result of Claimant's accident and injury of May 22, 1959 Claimant was temporarily and totally disabled through October 4, 1963 on which date he reached maximum medical improvement.
(2) That subsequent to October 4, 1963 Claimant's primary treatment was for injury resulting from grand mal epileptic seizures. That the medical treatment received by Claimant through February 4, 1963 was attributable solely to his accident and injury of May 22, 1959.
(3) The Deputy found Claimant at the time of the final hearing on September 24, 1964 was permanently, totally disabled. However, he apportioned Claimant's disability as follows:
"Seventy-five (75) per cent attributable to Claimant's accident and injury resulting in an injury to his low back and subsequent medical treatment thereof, with 10 per cent pre-existing claimant's accident and injury in the form of the degenerative but asymptomatic spinal condition at the L-3, L-4 level; 25 per cent is attributable to claimant's subsequent grand mal seizure resulting in the fractured vertebra of L-1, D-12 and D-8." (Emphasis supplied.)
Based on the foregoing findings, the Deputy held Employer-carrier liable to Claimant for payments of permanent partial disability benefits for 227.5 weeks, representing 65 per cent permanent partial disability attributable solely to the accident and injury, at the rate of $35 per week (his average weekly wage was found sufficient to entitle him to this rate). Said payments were held due and payable from October 4, 1963, the date Claimant was determined to have reached maximum medical improvement. Attorneys' fees and medical benefits were also allowed Claimant.
The Claimant-Petitioner has properly raised certain questions which we now decide in this review.
First, we find the Deputy and the full Commission improperly apportioned out of the award "10 percent pre-existing * * * in the form of the degenerative but asymptomatic spinal condition at L-3, L-4 level." The evidence recited by the Deputy in his order shows that Claimant had a pre-existing degenerative disc disease (an arthritic process) which appears not to have been disabling at the time of the accident, but was aggravated by it. Nor is there any evidence supporting a conclusion that some degree of disability attributable to the pre-existing condition would have resulted from the normal progress of the disease had the accident never occurred. However, inasmuch as this case was determined prior to the rendition of our decision in Evans v. Florida Industrial Commission, 196 So.2d 748 (Fla. 1967), the employer ought to have the opportunity, if it can, to produce evidence showing that a part of Claimant's disability is due to the normal progress of the pre-existing disease and would have existed at the time of the hearing had the accident never happened. If no showing of pre-existing disability is made on remand, we agree with the Claimant that he is entitled to compensation for permanent total disability without any apportionment of the pre-existing arthritic condition. See Evans, supra, and Robinette v. E.R. Jahna Industries, Inc., 208 So.2d 104 (Fla. 1968).
We agree with the Employer-carrier that a subsequent illness superimposed upon a compensable condition may not be added thereto for the purpose of increasing benefits to which an employee might not otherwise be entitled. However, in the instant case there is no showing by the Employer-carrier that the convulsions or seizures *292 which resulted in the fractured vertebrae (L-1, D-12, D-8) were the result of an independent disease, namely, epilepsy. The medical testimony reveals that the multiple compression fractures of L-1, D-12 and D-8 were caused by a combination of the seizures and osteoporosis or disuse. None of the three treating physicians and none of those with whom they consulted were able to state the cause of the seizures. Furthermore, extensive testing, including electroencephalogram, arteriogram, and pneumoencephalogram revealed "only some chronic brain damage and no localized area, or any reason to feel that man had epilepsy." In summary, the medical expert evidence reflects that the seizures were of unknown origin and does not conclusively prove nor disprove the causal relationship between the industrial accident and the subsequent seizures.
The uncontradicted evidence was that of an employee with no prior history of seizures and with no prior back difficulties who then suffered a compensable accident and back injury which was followed by three radical operations, prolonged hospitalization, prolonged periods in body casts, intense pain, and no evidence of an intervening accident. The fact of a serious injury is conclusively shown and the above mentioned evidence presented a sufficiently logical explanation of causal relationship of the seizures to the original accident and injury so as to require the Employer-carrier, who seeks to defeat recovery, to show that another cause of the injury is more logical and consonant with reason. Section 440.26(1), Florida Statutes (1967), F.S.A. See Crawford v. Benrus Market, 40 So.2d 889 (Fla. 1949), and Jim Rathmann Chevrolet Cadillac, Inc. v. Barnard, 200 So.2d 161 (Fla. 1967).
We agree with the Claimant that where, as here, the deputy finds a claimant is permanently and totally disabled, but concludes that only a portion of the permanent total disability is the result of a compensable accident the claimant is entitled to less than full benefits. However, the prescribed method is to pay compensation for that portion of his permanent total disability remaining that is a result of the compensable accident for the duration of his disability, rather than paying full benefits for a percentage of 350 weeks, as in permanent partial disability, or for a percentage of the employee's life expectancy. See Cook and Pruitt Masonry, Inc. v. Leonard, 149 So.2d 544 (Fla. 1963); S. & J. Mercury Cab v. Eibister, 168 So.2d 136 (Fla. 1964).
The cross-petition of Employer-carrier has been duly considered by us. It relates to the point discussed in the previous paragraph and contends that by accepting full benefits at the rate of $35 per week the Claimant is now estopped to seek payment as contended. We find this contention without merit but direct that an adjustment be made in future payments to give credit to Employer-carrier for such payments as may have already been made.
Except as specifically indicated otherwise herein, all other findings and adjudications of the Deputy and the full Commission are approved and affirmed.
It is directed that the cause be remanded for further proceedings not inconsistent herewith.
It is so ordered.
THOMAS, Acting C.J., and ROBERTS, DREW and THORNAL, JJ., concur.