458 So.2d 1207 (1984)
STATE of Florida, DEPARTMENT OF PUBLIC HEALTH, DIVISION OF RISK MANAGEMENT, Appellants,
v.
Muriel WILCOX, Appellee.
No. AY-85.
District Court of Appeal of Florida, First District.
November 15, 1984.
Rehearing Denied December 10, 1984.
*1208 Steven Kronenberg of Adams, Kelley & Kronenberg, and James J. Traitz, Miami, for appellants.
Alfred D. Bieley, Miami, for appellee.
SMITH, Judge.
The employer/carrier (E/C) appeal the deputy commissioner's order awarding claimant Muriel Wilcox (Wilcox) temporary total and permanent total disability benefits (TTD, PTD), costs, interest, and medical expenses. The E/C contend the deputy erred in awarding Wilcox TTD and PTD benefits. The E/C also maintain that it should not be required to pay the medical expenses incurred by Wilcox subsequent to her second, non-compensable, accident. We reverse and remand for further proceedings.
Wilcox, age 55, with 32 years experience as a nurse, was employed by the appellant Department of Public Health as a public health nurse at the time of a work-related automobile accident on August 3, 1978. Examination at the hospital revealed injuries to her back, hips, and legs. Wilcox began receiving treatment for these injuries from Dr. Green, whose examination on August 10, 1978, revealed the following: Wilcox was capable of standing erect and performing satisfactorily a heel-to-toe walk test; however, she exhibited mild spasm and tenderness in the L4-5 and L-5, S-1 regions of her lower back. Straight leg raising tests disclosed mild pain, although no disc or sciatic nerve problems were noted by Dr. Green. Finally, Dr. Green characterized his neurological examination of Wilcox at this time as producing essentially normal results. Dr. Green released Wilcox to return to work in January 1979. She did so on January 16, 1979.
However, she continued to complain of lower back and leg pain, and as a result she began consulting Dr. Russell in mid-January 1979. Dr. Russell testified below that he found, upon examination of Wilcox in January 1979, that she suffered tenderness over the spinous processes at L4-5 and S-1, as well as lower back pain during straight leg raising tests to eighty degrees with either leg. He characterized his findings as indicating lumbar radiculitis secondary to discogenic disease, possibly spondylosis. At the hearing below, Wilcox testified that after her return to work in January *1209 of 1979, she missed a number of days and half-days of work, attributing these absences to continued lower back and leg pain. Her job performance during this period of time apparently suffered; she testified below that her supervisor gave Wilcox lower job ratings because she was no longer able to perform all of her duties.
Wilcox suffered a second  non-compensable  automobile accident on December 6, 1979. Following this accident, she was examined by Dr. Russell on December 17, 1979. He found that Wilcox exhibited the same symptomatology as after the August 3, 1978 compensable accident. Dr. Russell also testified that he was not able to separate the two accidents in terms of their impact on Wilcox's ability to work. Even so, he was of the opinion that Wilcox was totally disabled, and had reached maximum medical improvement (MMI) as of August 25, 1982. He noted that Wilcox had undergone a laminectomy, performed by Dr. Guido at South Miami Hospital, on January 27, 1981, but that the surgery had not been successful in relieving her lower back or leg pain.
Also offered into evidence below was three depositions by Dr. Green. He testified that Wilcox's complaints of lower back and leg pain began in 1976, and that as of May 28, 1976, she suffered five percent (5%) impairment of the body as a whole due to lumbosacral sprain syndrome superimposed on mild degenerative arthritis of the lumbosacral spine. After examining Wilcox following her non-compensable accident, Dr. Green rated her impairment at that time as twenty percent (20%) of the body, with a portion of that rating attributable to the compensable accident, and a portion to the non-compensable accident.
In analyzing the previously-discussed evidence, the deputy rejected Dr. Green's deposition testimony relating to Wilcox's impairment rating after her first, compensable, automobile accident, noting that Dr. Green's opinions were inconsistent with a report he apparently filed with the E/C subsequent to his January 1979 examination of Wilcox. This report categorized Wilcox as totally disabled from August 3, 1978, and continuing through the date of the report. The deputy further found that Wilcox had lost confidence in Dr. Green professionally, and was justified in seeking treatment from Dr. Russell because her employment supervisor had encouraged her to do so. In this regard, the deputy found that the carrier, in a letter dated May 28, 1981, promised to accept responsibility for any charges incurred by Wilcox in treatment from Dr. Russell, since Wilcox's supervisor authorized the treatment. The deputy also accepted the opinion of Dr. Russell that Wilcox was totally disabled from future employment, and thus found that she was entitled to both TTD and PTD benefits, even though the deputy specifically stated:
In considering the testimony of Dr. Green and Dr. Guido by Deposition and Dr. Russell's Deposition as well as in person, I find that I am unable to apportion the extent of the impairment and injury sustained by Mrs. Wilcox secondary to her noncompensable accident of December 6, 1979... .
Finally, the deputy found that Wilcox was entitled to have the E/C pay for the medical expenses she incurred while under the care of Drs. Guido and Russell.
The E/C first assert that the deputy's order functionally effectuated an improper reverse merger in awarding Wilcox TTD and PTD benefits. We agree. A "forward" merger is properly found if a claimant suffers from a pre-existing permanent impairment which combines with a later compensable injury to produce a more severe permanent disability in the claimant than would otherwise have existed. Bordo Citrus Products v. Varnadore, 395 So.2d 260 (Fla. 1st DCA 1981); American Can Co. v. Tomasek, IRC Order 2-3365 (February 23, 1978), cert. denied, 368 So.2d 1375 (Fla. 1979). A "reverse" merger, on the other hand, is occasioned when a subsequent non-related and non-compensable injury is superimposed upon a compensable condition, thereby producing disabilities greater than would be suffered as a result *1210 of each injury by itself. Despite this "merger" of the two conditions, the disability resulting solely from the second accident is not compensable. Pan American World Airways v. Franchina, 396 So.2d 245 (Fla. 1st DCA 1981); Fisher v. Carroll Daniel Fisher Construction Co., 212 So.2d 289, 291 (Fla. 1968); Riverside Baptist Church v. O'Hara, IRC Order 2-2727 (March 14, 1975), cert. denied, 317 So.2d 82 (Fla. 1975). The increased disability resulting from the second accident is, however, compensable, if the subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is a direct and natural result of a compensable primary injury. Apgar & Markham Construction Company v. Golden, 190 So.2d 323 (Fla. 1966).
Since the deputy commissioner in his order on appeal appears to apply a "reverse merger" in arriving at the finding of total disability, it must be reversed. However, in view of the evidence indicating that on the date of her second (non-compensable) accident, the claimant was still suffering from the effects of the first (compensable) accident, it does not follow that she is entitled to no compensation award. Whether she was or could have become totally disabled in the absence of the second accident is quite another matter, and one that requires further consideration and findings by the deputy commissioner. In this connection, we observe that the deputy commissioner's inability to determine precisely, from a medical standpoint, the percentage of physical impairment attributable to each of the two accidents does not prevent or relieve the deputy from determining the extent of "disability," under Section 440.02(9), Florida Statutes, since the injured employee is compensated for loss of wage earning capacity, not mere functional impairment. Eden Roc Hotel v. Kearsch, 218 So.2d 751 (Fla. 1969); Nuce v. City of Miami Beach, 140 So.2d 303 (Fla. 1962); Miami Beach Awning Co. v. Socalis, 129 So.2d 414 (Fla. 1961).
For the guidance of the deputy commissioner on remand we find instructive the language of the Industrial Relations Commission in Lancaster Youth Development Center v. Waters, IRC Order No. 2-3706 (February 21, 1979) (compensable industrial accident followed by subsequently occurring non-related heart disease), where the Commission directed:
The Judge should determine what portion of the total present impairment is due to the unrelated condition and what portion is due to the compensable condition, including all disability to which that condition contributes. Benefits based either on the anatomical impairment from the unrelated condition or loss of wage earning capacity due to that impairment may not be awarded. Rather, the Judge must "carve out" the unrelated anatomical impairment if he finds it is presently causing disability. He is then free to apply the pertinent wage earning capacity factors to the residual anatomical impairment in order to arrive at the correct degree of permanent disability which is compensable. (citation omitted)
See also, Lancaster Youth Development Center v. Waters, 381 So.2d 1156 (Fla. 1st DCA 1980) (district court approved order of deputy commissioner entered pursuant to remand from IRC).
The deputy erred also in the award of medical expenses incurred by claimant while under the care of Drs. Russell and Guido. A correct statement of the law in this regard is found in Glades County Sugar Growers v. Gonzales, 388 So.2d 333 at 336:
... costs should include all medical care necessary for treatment of the compensable injury. Costs should also include any treatment required by the non-compensable injury if such treatment would not presently be required but for the existence of the compensable injury... . But the award should not include medical treatment required independently by the subsequent non-compensable injury when the removal of a hindrance to recovery from the compensable injury is merely an incidental effect of such treatment. It is the purpose of the [treatment]... that *1211 determines whether or not medical expenses ... are compensable. (citation omitted).
See also Eisenhower Construction Co. v. Berg, 406 So.2d 85 (Fla. 1st DCA 1981); Purex Corp. v. Fay, 400 So.2d 1021 (Fla. 1st DCA 1981). Since the order makes no distinction between the two accidents suffered by Wilcox or the medical expenses related to each, this cause must be reversed and remanded for entry of an order doing so.[1]
Accordingly, this cause is REVERSED, and the case is REMANDED to the deputy for further proceedings consistent with this opinion.
REVERSED and REMANDED with directions.
BOOTH and THOMPSON, JJ., concur.
NOTES
[1] The E/C raise the further point that Wilcox is barred from recovering the medical expenses she seeks by her alleged failure to gain authorization from the E/C before incurring these expenses. However, this cause is not controlled by cases such as Atkins v. Greenhut Construction Co., 447 So.2d 268 (Fla. 1st DCA 1984), and Usher v. Cothren, 445 So.2d 387 (Fla. 1st DCA 1984), which hold that a claimant who is offered alternative medical care may not unilaterally obtain medical treatment from a physician of her choice and subsequently be reimbursed by the E/C, because the deputy below found as a matter of fact that Wilcox was "encouraged," and hence authorized, by her supervisor to seek treatment by Dr. Russell. This finding is supported by competent, substantial evidence. McCandless v. M.M. Parrish Construction Co., 449 So.2d 830 (Fla. 1st DCA 1984).