512 So.2d 1031 (1987)
Linda Sue PARISH, Appellant,
v.
BAPTIST HOSPITAL, Self-Insured, Appellee.
No. BP-496.
District Court of Appeal of Florida, First District.
September 3, 1987.
Larry Hill, of Moore, Hill & Westmoreland, Pensacola, for appellant.
J. Nixon Daniel, III, of Beggs & Lane, Pensacola, for appellee.
MILLS, Judge.
Linda Sue Parish appeals from an order of the deputy commissioner denying her claim for temporary benefits and medical care on the ground that a noncompensable car accident occurring after the compensable injury was an intervening cause of her current physical problems. We reverse.
In February 1984, Parish suffered a compensable lumbosacral strain. She was treated conservatively with antiinflammatories and muscle relaxants and underwent a brief hospitalization for tests, which proved negative. At a 12 March 1984 office visit with her treating physician, Dr. Witter, Parish was feeling better, although she was still suffering from limited range of motion and some mild tenderness on palpation of the injured area. Witter noted at this time that Parish could return to work "in a week or so" and that her problems would be completely resolved "over the next few weeks." She was told to gradually resume normal activities, and a visit was planned for 19 March 1984 to observe the effect of those activities.
However, at the 19 March visit, Parish related that she had been in an automobile *1032 accident on 17 March. As a result, she was suffering greatly increased pain and more limited range of motion. It was Dr. Witter's opinion within reasonable medical probability that, without the automobile accident, Parish could have returned to work on 26 March 1984 and would have reached maximum medical improvement around 12 April 1984. The E/C ceased payment of temporary benefits on the date postulated for return to work, 26 March, and has paid no benefits since that date.
Witter further testified that the problems Parish was suffering when she left his care in August 1984 "were most likely substantially attributable to the March 1984 auto accident" and not to the February 1984 industrial accident. Dr. Flynn, an orthopedist who commenced treating Parish in September 1984, could not differentiate between injury caused in February 1984 and in the March 1984 accident, but did opine that she had not yet reached maximum medical improvement. After a hearing, the deputy denied Parish's claim. Relying on Dr. Witter's opinion that the March 1984 car wreck was the most likely cause of the present back problems, the deputy found that the wreck was "an intervening event, sufficient to break the causal chain" between the industrial injury and Parish's present complaints.
It appears from the foregoing language that the deputy employed the doctrine of independent intervening cause to deny the compensation and medical benefits sought herein. However, that doctrine is only applicable in the determination of whether or not an accident occurring subsequent to a primary compensable injury is itself compensable. Here, it is conceded that the March 1984 auto accident was noncompensable. The situation is therefore more similar to a "reverse merger", occasioned when a subsequent non-related and noncompensable injury is superimposed upon a compensable condition, thereby producing disabilities greater than would be suffered as a result of each injury by itself. Department of Public Health v. Wilcox, 458 So.2d 1207, 1209-10 (Fla. 1st DCA 1984) (Wilcox I).
It is well-settled that, in such a factual situation, the occurrence of the second accident does not "break the causal chain" for all claims, but only those which would not have resulted if the later noncompensable accident had not occurred, Newhouse v. Volusia Co. School Board, 474 So.2d 1222, 1224 (Fla. 1st DCA 1985), especially where, as here, the evidence shows that, on the date of the second (noncompensable) accident the claimant was still suffering from the effects of the first (compensable) accident. Wilcox I at 1210.
The deputy commissioner's inability to determine precisely, from a medical standpoint, the percentage of physical impairment attributable to each of the two accidents does not prevent or relieve him from determining the extent of "disability." The Wilcox I court has provided guidelines for a deputy in such cases:
The [deputy] should determine what portion of the total present impairment is due to the unrelated condition and what portion is due to the compensable condition, including all disability to which that condition contributes. Benefits based either on the anatomical impairment from the unrelated condition or loss of wage earning capacity due to that impairment may not be awarded. Rather, the [deputy] must "carve out" the unrelated anatomical impairment if he finds it is presently causing disability. He is then free to apply the pertinent wage earning capacity factors to the residual anatomical impairment in order to arrive at the correct degree of permanent disability which is compensable.
Wilcox I at 1210. It was error for the deputy herein to deny compensation benefits without making the determinations outlined above. That portion of the order is reversed and the case remanded for the determination of this issue, with leave to receive additional evidence if the deputy deems it advisable. See Department of Public Health v. Wilcox, 483 So.2d 21, 22 (Fla. 1st DCA 1985) (Wilcox II) (such apportionment is appropriate when injuries arise from a noncompensable accident following, and identifiably distinct from, injuries incurred in a compensable accident).
*1033 It was also error to deny all medical expenses incurred since the March 1984 automobile accident. With regard to such expenses, award should be made for "all medical care necessary for treatment of the compensable injury" and should also include "any treatment required by the noncompensable injury if such treatment would not presently be required but for the existence of the compensable injury." Wilcox I at 1210-11 citing Glades Co. Sugar Growers v. Gonzales, 388 So.2d 333, 336 (Fla. 1st DCA 1980). Since the order denies medical benefits without distinguishing the medical expenses related to each accident, it must be reversed and the case remanded for entry of an order which does so.
Reversed.
SMITH, C.J., concurs.
ERVIN, J., specially concurs with written opinion.
ERVIN, Judge, specially concurring.
I write only to clarify certain language appearing in the majority's opinion, particularly that quote at page 1032, supra, from Department of Public Health v. Wilcox, 458 So.2d 1207, 1210 (Fla. 1st DCA 1984) (quoting in turn from Lancaster Youth Development Center v. Waters, IRC Order No. 2-3706 (February 21, 1979)). Although I agree with the majority that the occurrence of the second accident did not break the causal chain for all claims, but only those that would have resulted if the later noncompensable accident had not occurred, Newhouse v. Volusia County School Board, 474 So.2d 1222, 1224 (Fla. 1st DCA 1985), I think it important to note certain distinguishing facts between the facts in Wilcox and those in the present case. The claim in Wilcox was for both temporary and permanent compensation benefits, as well as for an award of medical expenses, while the claim in the present case was for temporary benefits and medical care  permanent compensation benefits were not at issue. The quote from Wilcox, above referred to, requiring the deputy to apportion from the award the unrelated anatomical impairment, applies only to a claim for permanent benefits, since, pursuant to Section 440.15(5)(a), Florida Statutes, as between employers and employees, "[c]ompensation for temporary disability, medical benefits, and wage-loss benefits shall not be subject to apportionment."
It is possible, however, as reflected in the majority's opinion that the doctrine of reverse merger applies to the instant case, in that a noncompensable injury followed a compensable injury, which may have produced a greater extent of disability than would have been suffered as a result of each injury by itself. Reverse mergers are per se improper, whether they apply to claims for temporary or permanent compensation benefits. See Glades County Sugar Growers v. Gonzales, 388 So.2d 333 (Fla. 1st DCA 1980).
I would therefore reverse and remand the case to the deputy to determine claimant's entitlement to temporary disability benefits from March 26, 1984, the date such benefits were terminated by the employer. If the deputy is able to determine after remand, either on the present record, or, at his option, upon additional evidence, that the doctrine of reverse merger is applicable, because the second accident has increased the degree of temporary disability, the claim for temporary benefits should be denied, except as it relates to benefits flowing from the compensable accident.
I otherwise agree with the majority's opinion.