NIMMONS, Judge.
The employer and its carrier appeal an order awarding claimant attendant care benefits. We affirm.
The claimant suffered a head injury arising out of and in the course of his employment on March 12, 1984. The claimant subsequently developed psychiatric difficulties as a result of a post-concussion syndrome. Claimant subsequently sought attendant care benefits commencing January 14, 1986 and continuing through August 12, 1987. The claimant requested reimbursement for services provided by his wife at the minimum wage rate of $3.35 per hour for six to eight hours per day.
The evidence presented at the final hearing on this claim established that on June 24,1986, the claimant developed Bell’s Palsy. Bell’s Palsy is a viral condition which manifested itself in claimant through facial paralysis, slurred speech, and difficulty in sleeping and swallowing. It also affected claimant’s eyesight, memory and driving ability. Dr. Casademont, claimant’s treating psychiatrist, testified in his deposition that the claimant’s psychiatric condition resulting from the industrial accident had become somewhat stable for approximately six to eight months prior to the commencement of the Bell’s Palsy, which further deteriorated claimant’s condition. It was Dr. Casademont’s opinion that claimant’s adaptation level was below what it had been previously and that claimant needed more attention after the June 24, 1986 onset of Bell’s Palsy. Dr. Casade-mont felt that the Bell’s Palsy was superimposed on an individual with already strained and limited coping resources due to his accident. He believed that the claimant needed his wife with him constantly to monitor his medications and to keep an eye on his periods of depression and anxiety.
On the basis of Dr. Casademont’s testimony, the judge found that the claimant’s condition following the episode of Bell’s Palsy on June 24, 1986 had deteriorated to the point where it was necessary that claimant be attended almost constantly. The judge ordered the employer/carrier to reimburse the claimant’s wife for her attendant care services at the minimum wage rate of $3.35 per hour for eight hours per day for the time period from June 24, 1986 through August 12, 1987.
The employer/carrier argue on this appeal that the judge’s award of attendant *1294 care benefits functionally effectuated an improper reverse merger. A reverse merger
is occasioned when a subsequent, non-related and non-compensable injury is superimposed upon a compensable condition, thereby producing disabilities greater than would be suffered as a result of each injury by itself. Despite this “merger” of the two conditions, the disability resulting solely from the second accident is not compensable. Pan American World Airways v. Franchina, 396 So.2d 245 (Fla. 1st DCA 1981); Fisher v. Carroll Daniel Fisher Construction Co., 212 So.2d 289, 291 (Fla.1968); Riverside Baptist Church v. O’Hara IRC Order 2-2727 (March 14, 1975), cert. denied, 317 So.2d 82 (Fla.1975). The increased disability resulting from the second accident is, however, compensable, if the subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is a direct and natural result of a compensable primary injury. Apgar & Markham Construction Company v. Golden, 190 So.2d 323 (Fla.1966).
State, Department of Public Health, Division of Risk Management v. Wilcox, 458 So.2d 1207, 1209 (Fla. 1st DCA 1984).
Controlling in this case is this court’s decision in Copeland v. Bond, 528 So.2d 458 (Fla. 1st DCA 1988). In Copeland, the claimant had experienced industrial accidents which resulted in severe injuries to his shoulder and back, and was accepted as permanently and totally disabled. The restrictions placed on claimant because of his industrial accidents were that he was to avoid overhead reaching and stooping or bending at the waist. Due to an unrelated diabetic condition, a portion of one foot was subsequently amputated, and claimant also underwent rectal surgery. To facilitate his recovery from these procedures, claimant’s medical recommendations were to immerse his foot periodically in a basin of water and occasionally soak in a bathtub. Because of the restrictions that had been placed on claimant as a result of his industrial injuries, claimant required assistance to carry out the necessary therapy associated with his subsequent unrelated injuries.
This court held that claimant was entitled to attendant care benefits. According to the court:
Section 440.13(2)(a), Florida Statutes, directs the employer of a claimant who sustains an industrial injury to furnish such medical attendance as the nature of the injury or the process of recovery requires. In the present case the deputy declined to award such care, reasoning that claimant’s need was necessitated by the nonindustrial surgeries. However, medical care is properly awarded pursuant to section 440.13(2)(a) when the need for such care arises from the combined effect of industrial and nonindustrial conditions. See Jordan v. Florida Industrial Commission, 183 So.2d 529 (Fla.1966); Glades County Sugar Growers v. Gonzales, 388 So.2d 333 (Fla. 1st DCA 1980). As Gonzales indicates, the employer is responsible for “treatment required by the non-compensable injury if such treatment would not presently be required but for the existence of the compensable injury.”
In the present case the care which claimant requested would not be required but for the existence of his com-pensable injuries. While the ultimate purpose of such care is to facilitate claimant’s recovery from the nonindustrial surgeries, it is the industrial injuries which are producing the need for assistance in administering such care. The claim should therefore have been awarded in accordance with Jordan and Gonzales, supra, as attendant care authorized by section 440.13(2)(a), Florida Statutes.
Likewise, in the present case, the requested care was necessitated by claimant’s industrial injury, i.e., “the care which claimant requested would not be required but for the existence of his compensable injuries.” 528 So.2d at 459. It is undisputed that as a result of his industrial injuries, *1295 claimant developed serious psychiatric problems and was under the care of a psychiatrist. Claimant would become despondent, depressed and had even attempted suicide. According to claimant’s treating psychiatrist, once claimant developed the Bell’s Palsy, he became even more despondent, depressed and required more attention.
It’ is apparent from Dr. Casademont’s testimony that claimant’s initial brain injury did not directly cause the onset of the Bell’s Palsy from a neurological standpoint. However, it is also apparent that the mental, emotional, and behavioral problems claimant experienced with the onset of the Bell’s Palsy are in fact related to the industrial injury from a psychiatric standpoint in that the psychiatric problems claimant suffered as a direct result of his industrial accident made him more susceptible to the depression and anxiety he suffered with the Bell’s Palsy condition. As stated by Dr. Casademont in his deposition:
BY MR. MILLER:
Q. Do you have an opinion, based upon reasonable medical probability, as to the relationship between the compensable injuries and the Bell’s palsy?
* * *
But this injury, whether it was a Bell’s palsy or would have been any other kind of physically incapacitating illness, is going to virtually throw a monkey wrench in the treatment and in his eventual recovery and condition, because he will have some other, maybe, residual disabilities that he will have to cope with. And we are dealing here with a person that has very strained and very limited coping resources.
MR. ZIENTZ: Is that as a result of the condition related to the accident?
THE WITNESS: Right.
BY MR. MILLER:
Q. Entirely, or is that also part of his personality, this adaptive capability?
A. I think it is mostly related to the accident. I don’t have any evidence that he had any kind of difficulties functioning before. And he started having the difficulties after he got the injury and had began to evidence both emotional and neurological problems because of the head injury.
Contrary to appellants’ assertions, there is no improper reverse merger involved in this case. Claimant’s psychiatric disability which required attendant care did not result solely from the Bell’s Palsy condition. See State, Department of Public Health, Division of Risk Management v. Wilcox, 458 So.2d 1207, 1209 (Fla. 1st DCA 1984). This disability was related to claimant’s industrial injury in that it was the psychiatric problems brought about by this injury that left claimant in a fragile psychiatric state. As in Copeland, the attendant care in the instant case was necessitated by claimant’s industrial injury.
The employer/carrier also assert that the claimant is not entitled to payment for the services rendered by his wife during the period of his viral infection because such services did not go beyond those which are normally provided by family members gratuitously. We disagree. It is evident under the facts of this case that the services rendered by claimant’s spouse were “extraordinary” and not gratuitous, and therefore the claimant was entitled to attendant care benefits. See Don Harris Plumbing Co., Inc. v. Henderson, 454 So.2d 745 (Fla. 1st DCA 1984); Honeycutt V. R.G. Butlers Dairy, 525 So.2d 984 (Fla. 1st DCA 1988); Standard Blasting & Coating v. Hayman, 476 So.2d 1385 (Fla. 1st DCA 1985).
We have examined the remaining issue raised by appellant and find it to be without merit.
AFFIRMED.
JOANOS, J., concurs.
WENTWORTH, J., concurs with written opinion.