SHIVERS, Judge.
Claimant appeals an order of the Judge of Compensation Claims (JCC) denying a claim for 1) continued medical treatment from a medical health care provider in the form of supportive (palliative) care and for 2) penalties, interest, court costs, and attorney’s fees. It is undisputed that claimant sustained a compensable industrial accident on September 27, 1985, when he was struck by a falling log that injured his lower back *1131 and neck. He was treated by Dr. Ciejek, an orthopedic surgeon, from October 1985 until May 1989, when he was discharged from that doctor’s care and told to return as needed. Claimant was involved in an automobile wreck on February 23, 1989, that totally destroyed the car he was driving. The JCC received testimony relating to the allegation that, during the period of medical treatment for the alleged work-related pain and injuries, claimant engaged in a strenuous program of body-building activities, including as many as 500 pushups on a daily basis. Other testimony showed that claimant had resigned from his job with the school board after his industrial accident and subsequently worked as a truck driver for the D.L. Smith Company and as a labor loader for Central State Diversified. The unrefuted testimony is that his work as a labor loader required claimant to lift 90 to 100-pound shafts that were inserted into rolls of paper. The employer/servicing agent (E/SA) had provided temporary total disability benefits, temporary partial wage loss benefits, and medical benefits prior to the August 1990 filing of the claim at issue here.
The E/SA’s position was that no causal condition existed between claimant’s condition, at the time of the claim, and his 1985 industrial accident, and that his medical problems resulted from intervening causes such as the car accident, the vigorous bodybuilding activities, and the strenuous demands of his subsequent employment.
Claimant alleges that the JCC erred in the following respects: 1) applying the independent intervening cause rule to deny the claim where his symptoms from the compensable accident were ongoing and he was receiving medical treatment when the alleged intervening accident or activities occurred; 2) finding that claimant engaged in intervening body-building activities, absent competent substantial evidence; 3) failing to determine the extent to which his injuries and symptoms were attributable to the noncompensable car wreck rather than to the industrial accident; and 3) finding that he reached maximum medical improvement with a 0% impairment rating at the time of release. We find an absence of competent substantial evidence to support some of the findings of the JCC, and we reverse and remand for additional testimony.
The JCC determined, in effect, that claimant’s current pain and other symptoms were not caused at all by his industrial accident. This finding was made despite the uncontroverted testimony from the treating doctors that he was consistent in his complaints and that the objective evidence of his original injury, such as muscle spasms, was ongoing. In McPherson v. Broward County School Board, 527 So.2d 238 (Fla. 1st DCA 1988), the claimant had a work-related accident but later sustained a clearly noncompensable injury. The deputy commissioner found that medical treatment received after the noncompensable accident related only to that accident, which constituted an intervening negligent act that broke the chain of causation connecting the original injury. Id. at 239. We reversed that order, after finding an improper application of the intervening cause rule where the evidence failed to show that the claimant was no longer suffering any effects of her work-related injuries at the time of her noncompensable accident. In the present case, if some of his symptoms caused by the original accident were ongoing after the occurrence of any of the alleged subsequent injuries and activities, the intervening cause rule will not bar benefits based on the compensable claim. Id. at 239-40; Newhouse v. Volusia County School Board, 474 So.2d 1222 (Fla. 1st DCA 1985). Further, our holding in Parish v. Baptist Hospital, 512 So.2d 1031 (Fla. 1st DCA 1987) supports the argument that the independent intervening cause rule should not have been utilized here because the compensability of the alleged subsequent injuries was not disputed. See 512 So.2d at 1032. . Circumstances involving an original compensable injury followed by injurious, but noncompensable, claims require the JCC to determine the extent to which each accident contributed to the injuries and to what extent benefits might yet be due based on the compensable injury. See Parish, 512 So.2d at 1032; State, Dep’t *1132 of Public Health v. Wilcox, 483 So.2d 21, 22 (Fla. 1st DCA 1985).
Based on a May 1986 notation in the medical records referring to claimant’s “excessive weight lifting,” Dr. Ciejek stated in deposition that he had assumed that some of claimant’s muscle problems might be attributable to such physically demanding activities. The evidence showed that the original notation about weight lifting was written by claimant’s dermatologist. When questioned about his own August 1986 written notations that claimant “does a significant amount of pushups ... at least 500 a day on a daily basis” and that the back strain might be related thereto, Dr. Ciejek testified that he was probably implying that claimant should reduce his body-building activities. Claimant adamantly denied doing any body building after the industrial accident. Dr. Ciejek conceded that he could not recall ever talking with claimant about such activities. Claimant acknowledged that he had engaged in a vigorous body-building program prior to his accident, and he explained that the conversations with his doctors related solely to his prior body-building work.
The E/SA argue that the record demonstrates that claimant did in fact continue to do pushups after the accident. However, that argument depends upon the accuracy of the written medical notations. Admittedly, Dr. Ciejek’s notes were based on the notes of another treating physician who did not testify. The testimony of Dr. Ciejek on which the E/SA rely was premised on the supposition that the dermatologist’s notes were accurate and reflected activities occurring after the compensable accident. Through the process of repeated questioning in deposition, Dr. Ciejek’s responses concerning a hypothetical regimen of body building were mistakenly interpreted to mean that claimant was engaging in those activities during the period encompassed in this claim. The questions related to “a person who can do 500 pushups a day” or were expressly premised on the supposition that claimant was, in fact, engaging in those activities. As questioning continued, it was easy to lose sight of the hypothetical basis of the inquiries, with the result that the JCC found that the “medical records of Dr. Peter Ciejek clearly indicate that the claimant was engaged in body building activity following his industrial accident.” It is possible that, upon remand, the JCC will find reliable evidence to support the finding as to the 500 daily pushups or other strenuous recreational activities. If that is the case, the JCC should determine to what extent claimant’s muscle spasms and other medical problems resulted from the other events such as physical exertion and the car wreck. Based on the record on appeal, we find no competent substantial evidence to support that portion of the order.
The JCC relied on evidence from Dr. Ciejek to support the finding that claimant had a “0% improvement impairment rating on 5/01/89” upon reaching MMI, when he was “released to return to work full-duty.” The 0% impairment rating is not supported by competent substantial evidence, in that Dr. Ciejek admitted in deposition that that rating was determined at a time when he was not aware of certain pertinent 1988 AMA Guides. He subsequently gave claimant a 4% whole person impairment rating. On remand, the JCC may consider any additional testimony needed to clarify the timing and the percentage of the impairment.
As to the statement in the JCC’s order that the industrial accident occurred “on 9/27/89,” whereas it actually occurred exactly four years earlier, we find that to be merely a scrivener’s error, given the abundant evidence elsewhere in the order that the JCC was aware of the timing of the accident.
REVERSED and REMANDED for further proceedings and additional testimony consistent with this opinion.
WIGGINTON and BARFIELD, JJ., concur.