913 So.2d 105 (2005)
Robbin TYSON, Appellant/Cross-Appellee,
v.
PALM BEACH COUNTY SCHOOL BOARD and F.A. Richard & Associates, Appellees/Cross-Appellants.
No. 1D04-3600.
District Court of Appeal of Florida, First District.
October 26, 2005.
Barbara B. Wagner, Esquire of Wagenheim & Wagner, P.A., Fort Lauderdale and Jerry J. Goodmark, Esquire of Goodmark, Goodmark & Goldstone, P.A., West Palm Beach, for Appellant/Cross-Appellee.
Robert L. Bamdas, Esquire of Kelley, Kronenberg, Gilmartin, Fichtel & Wander, Miami Lakes, for Appellees/Cross-Appellants.
*106 PER CURIAM.
Robbin Tyson appeals, and the Palm Beach County School Board and F.A. Richard & Associates (the E/C) cross-appeal, from the Merit Order entered by the judge of compensation claims (JCC) awarding an increase in attendant care benefits. We affirm on the cross-appeal and on the main appeal in part, but reverse and remand the order for an award of additional attendant care benefits.
Ms. Tyson suffers from multiple ailments, including hypertension, diabetes, and coronary and orthopedic conditions. All have been accepted by the E/C as compensable, growing out of back injuries at work. Since the parties' stipulation in 1989, the E/C have provided attendant care benefits in the amount of seventeen hours per week so that Ms. Tyson could have assistance with heavy housekeeping (three hours per week) and some of her personal needs (two hours per day).
In December 2002, Ms. Tyson was involved in a motor vehicle accident, which increased her attendant care needs from seventeen hours per week to twenty-four hours per day. The accident itself caused most of the increased need, but part of the increased need is because of new obstacles to treatment of her compensable, work-related injuries. We have held:
Section 440.13(2)(a), Florida Statutes, directs the employer of a claimant who sustains an industrial injury to furnish such medical attendance as the nature of the injury or the process of recovery requires.... [M]edical care is properly awarded pursuant to section 440.13(2)(a) when the need for such care arises from the combined effect of industrial and nonindustrial conditions. See Jordan v. Florida Industrial Commission, 183 So.2d 529 (Fla.1966); Glades County Sugar Growers v. Gonzales, 388 So.2d 333 (Fla. 1st DCA 1980). As Gonzales indicates, the employer is responsible for "treatment required by the non-compensable injury if such treatment would not presently be required but for the existence of the compensable injury."
C & J Delivery v. Garcia, 560 So.2d 1292, 1294-95 (Fla. 1st DCA 1990) (affirming award of attendant care benefits because "[c]laimant's psychiatric disability which required attendant care did not result solely from the [non-compensable] condition," where "the attendant care ... was necessitated by claimant's industrial injury") (quoting Copeland v. Bond, 528 So.2d 458, 459 (Fla. 1st DCA 1988) (reversing denial of attendant care benefits where "the care which claimant requested would not be required but for the existence of his compensable injuries")).
To the extent increased attendant care is required after the motor vehicle accident for Ms. Tyson's compensable injury and its sequelae, such care is the E/C's responsibility. But increased need stemming solely from the non-compensable motor vehicle accident, unrelated to the compensable conditions, is not the responsibility of the E/C. Accordingly, the JCC was correct to reject Ms. Tyson's argument that under the hindrance to recovery doctrine, attendant care should be granted even "[t]o the extent that ... claimant's need for ... assistance may be considered related to ... her motor vehicle accident in December 2002, rather than her work injuries":
[U]nder C & J Delivery and Copeland, the claimant is entitled to compensation for her increased need in attendant care.... Nevertheless, C & J Delivery and Copeland do not provide that the claimant is entitled to all the medical care she might need as a result of the combination of her industrial and nonindustrial accidents. Instead, C & J Delivery and Copeland indicate that the *107 disability resulting solely from the second accident is not compensable if it is not a direct and natural result of the compensable primary injury.... Thus, the case law does not support the claimant's argument that she should be able to recover for any present impairment caused solely by the MVA.
As the JCC ruled, the hindrance to recovery theory makes treatment or assistance compensable only to the extent treatment or assistance is necessary for compensable injuries, not generally to keep a claimant healthy and safe. See City of Miami v. Korostishevski, 627 So.2d 1242, 1244-45 (Fla. 1st DCA 1993) (stating that claimant "is entitled under this theory only to that treatment of his [non-compensable] cancer necessary to effectively treat the [compensable] hernia," and affirming JCC's determination of responsibility to the extent that it "assign[ed] responsibility only for that treatment necessary to effectively treat the compensable hernia condition"); Urban v. Morris Drywall Spray, 595 So.2d 60, 61 (Fla. 1st DCA 1991) ("[W]e hold that claimant is entitled to that treatment of his diabetic condition necessary for effective treatment of his compensable injuries. It will, however, be necessary for the JCC to make specific findings as to whether such diabetes treatment was indeed a necessary adjunct to the treatment of claimant's compensable injuries."); Roth Bros. of Fla. v. Spodris, 451 So.2d 947, 947 (Fla. 1st DCA 1984) ("[T]reatment for a condition not shown to be causally related to the compensable injury should be the responsibility of the employer `[i]f... one of the primary purposes of the treatment is also removal of a hindrance to recover from the compensable accident....' Decks, Inc. of Florida v. Wright, 389 So.2d 1074, 1076 (Fla. 1st DCA 1980)."); Gonzales, 388 So.2d at 336 (holding E/C is not responsible for "medical treatment required independently by the subsequent non-compensable injury when the removal of a hindrance to recovery from the compensable injury is merely an incidental effect of such treatment").
The JCC identified attendant care that had the primary purpose of removing a hindrance to treatment for the compensable conditions, determining:
Based on the testimony of Dr. Kanner [(Ms. Tyson's treating physician)], Mr. Johnson [(Ms. Tyson's caregiver)], and the claimant, due to the combination of the claimant's compensable conditions and the impairment of mental functioning since the December 10, 2002 MVA, I find that the claimant has required increased assistance and supervision for checking her blood sugar level, for transportation to authorized doctors, for ambulation, to manage payment of her bills and to obtain her prescriptions and groceries. I also find that the foregoing assistance would not be presently required but for the existence of the claimant's compensable conditions.
....
With respect to the list in the preceding paragraph of the claimant's increased attendant care needs for her compensable conditions post-MVA, I find that an additional 3.0 hours per day should be added to the current 2.0 hours per day.... This results in a total of 5.0 hours per day or 35 hours per week.... Thus the total attendant care to be received by the claimant is 38 hours per week.
But, according to the uncontroverted evidence, the list of care-related tasks deemed compensable by the JCCassistance with and supervision of Ms. Tyson's blood sugar level testing, and assistance with transportation to her authorized doctors, ambulation, payment of her bills, and *108 obtaining her prescriptions and groceriesis incomplete.
The testimony of Dr. Kanner, accepted by the JCC, showed that Ms. Tyson has been unable to administer medication on her own since the 2002 accident, and that this is a significant hindrance to treating her compensable hypertension, cardiac, diabetes, and orthopedic conditions. Dr. Kanner testified that it is necessary that a caregiver "not only get her medications for her but also to make sure that they are administered correctly." Dr. Kanner explained that this includes having "someone assist her in the glucometer test and administering the insulin by injection" to treat her diabetes.
The same evidence that supports the JCC's award of attendant care for assistance with testing blood sugar levels and filling her prescriptions also requires an award of attendant care for assistance with the administration of medications related to her compensable conditions. While the JCC awarded benefits for the "increased assistance and supervision for checking her blood sugar level" and "obtain[ing] her prescriptions," benefits were not awarded for assistance with (or supervision of) the administration of medications, such as her twice daily insulin injections.
We therefore reverse the order, pro tanto, and remand for the JCC to award additional attendant care benefits for assistance with the administration of medications for Ms. Tyson's compensable conditions, but affirm otherwise.
BENTON, PADOVANO, and BROWNING, JJ., concur.